UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| GWENDOLYN M. LYNN, | ) CV 05-462-SH |
| | ) |
| | ) MEMORANDUM DECISION |
| Plaintiff, | ) AND ORDER |
| v. | ) |
| | ) |
| JO ANNE B. BARNHART, Comm. | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act. Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled by the undersigned. This action arises under 42 U.S.C. § 405(g) and § 1383(c), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The plaintiff and the defendant have filed their pleadings, the defendant has filed the

certified transcript of record, and the parties have filed a Joint Stipulation. After reviewing the matter, the Court concludes that the decision of the Commissioner should be affirmed.

On September 13, 1995, Gwendolyn M. Lynn filed an application for DIB alleging an onset date of April 30, 1994. [Administrative Record ("AR") 60] Her claim was denied on October 4, 1995. [AR 64] Then, on November 3, 1998, the Plaintiff filed for both DIB and SSI claiming an inability to work due to cervical cancer, high blood pressure, an irregular heart condition, slight memory loss and confusion, a history of sickle cell and vision impairments. [AR 67, 73, 89] The Plaintiff alleged the same onset date of April 30, 1994. [AR 106] On February 22, 2000, an Administrative Law Judge ("ALJ") denied her claim. [AR 18, 356, 362-63] The Appeals Council reviewed the case and, on February 2, 2002, remanded the case concluding that the record was incomplete and that the hearing tape was partially inaudible. [AR 18, 378-79]

On remand, the focus was on whether the Plaintiff's low IQ, hypertension and obesity met a listed medical condition of section 12.05(C), (mental retardation). [AR 39] At the time of the second hearing, the Plaintiff was 54. [AR 18, 106] The record showed that the Plaintiff had been employed as a food service worker from 1969, at the age of 20, until 1994. [AR 90, 98] A food service worker is considered a light occupation on the low end of semi-skilled. [AR 55] On September 18, 2003, the same ALJ determined that the Plaintiff's impairments did not meet or equal any listed impairment, but that she had been disabled due to increased weight, hypertension, and cardiomegaly as of February 10, 2003 and was entitled to SSI. [AR 17, 23-24] In addition, the ALJ concluded that from March 30, 1994 through February 10, 2003 she was able to perform her past work. [AR 17, 23-24]

The Plaintiff challenges the unfavorable portion of the ALJ's decision for two reasons. First, that the ALJ erred in concluding that she did not meet the criteria for a medical listing under section 12.05 because the decision was not supported by

substantial evidence. And, second, that the ALJ incorrectly assessed her credibility.

### **Issue One**

The Plaintiff claims that because of her borderline IQ, obesity, and hypertension she satisfies the criteria for a presumptive disability of retardation under the medical listing of section 12.05(C), and that the ALJ erred in finding that her impairments did not meet or equal the listing. The Court agrees with the Defendant that the Plaintiff's claim is incorrect.

Section 12.05 states that "[m]ental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning," and the evidence shows that the onset of the impairment occurred before the age of 22. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05. The required level of severity is met when one of four conditions is satisfied. Id. The Plaintiff asserts that she satisfies the third condition, section 12.05(C), which reads: "[a] valid verbal, performance, or full scale IQ of 60 through 70, and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id.

However, the "mere diagnosis of an impairment listed in Appendix 1 is not sufficient to sustain a finding of a disability." Key v. Heckler, 754 F.2d 1545, 1549 (9th Cir. 1985); see also Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990). "[A]n ALJ should not consider a claimant's 'impairment to be one listed in Appendix 1 solely because it has the diagnosis of a listed impairment. It must also have the findings shown in the Listing of that impairment.' [citation omitted]" Young, 911 F.2d at 184; Key, 754 F.2d 1549-50. In other words, "[a]n applicant must show that [her] impairment meets or equals the severity and durational requirements of the applicable impairment." Young, 911 F.2d at 181. Section 12.00 states that the additional physical or other mental impairment required by section 12.05(C) must be a "severe impairment," and it must significantly limit one's

"physical or mental ability to do basic work activities." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A). Although the results of IQ tests are useful in determining whether a mental impairment exists, the actual intelligence test is "only part of the overall assessment," and that one should also look at the accompanying narrative report to see whether the IQ scores are consistent with the "degree of functional limitation." Id. at 12.00(D)(6)(a).

Although the Plaintiff's IQ test results show that she has a Performance IQ of 66, within the mildly mentally retarded range, and a Full Scale IQ of 70, in the borderline range, [AR 282,] she does not meet or equal the listing in section 12.05(C). To begin with, section 12.05 requires evidence showing that the mental impairment initially manifested itself during the claimant's developmental period. The Plaintiff was age 49 at the time the IQ test was administered. [AR 279] Furthermore, the Plaintiff presented no medical evidence or documentation that her condition began before she turned age 22. The only support for such a proposition comes from one doctor who performed a neurological exam on the Plaintiff and stated that he thought her condition was "pre-dominantly pre-existing," [AR 352,] but this in itself is not enough to support the assertion that the initial onset of the impairment occurred before age 22.

Further, considering beyond the IQ score, as the ALJ did in his decision, to the accompanying report and the other mental examinations performed, it appears that the Plaintiff's borderline intelligence did not significantly limit her ability to work. Dr. Paculdo, after administering a complete psychiatric evaluation, stated that plaintiff appeared "to be functioning in the normal range of intelligence" and that her prognosis was "good." [AR 268-69] The physician who administered the IQ tests also noted in his report that her concentration and attention appeared to be within normal limits, [AR 281,] that "she would be able to function in a regular job setting without additional behavioral controls," that "[h]er reasoning capabilities were adequate," that the "claimant would be able to work with others," and that she

could take public transportation to work [AR 283.] In addition, a medical consultant also found that she had no marked mental functional limitations. [AR 288] Thus, there is substantial evidence to support the ALJ's determination that the Plaintiff has "at least borderline cognitive functioning" and "can do simple work." [AR 22]

In addition, the physical impairments that the Plaintiff suffers from, while they do limit her functional ability, do not significantly limit her ability to do basic work activities. As discussed in detail by the ALJ in his decision, the Plaintiff's complaints of cervical cancer and rectal bleeding were both successfully treated, and because there have been no reoccurrences of late, these cannot contribute to a finding of disability. [AR 18-19]

Moreover, while the ALJ found the Plaintiff's obesity and hypertension to be severe impairments, there is no evidence that before February 10, 2003, that they significantly limited her ability to work. [AR 17-24] In December of 1998, one physician diagnosed the Plaintiff with hypertension and obesity, but stated that these conditions could be satisfactorily managed and that she should be able to participate in moderate physical activities. [AR 263] In 1999, a medical consultant found that the Plaintiff, despite her medical condition, was capable of performing medium work with mild postural limitations. [AR 271-72] Additionally, the record shows that the Plaintiff was taking medication to treat her hypertension in 2000. [AR 327] Consequently, even if the Plaintiff met the Listed diagnosis in section 12.05(C), she did not have a physical impairment which imposed a significant work-related functional limitation, thus the ALJ's finding that she did not meet the Listing set forth in section 12.05 is supported by substantial evidence.

## **Issue Two**

The Plaintiff further alleges that the ALJ incorrectly assessed her credibility. The Court rejects the Plaintiff's claim. "Credibility determinations are the

provenance of the ALJ" and should not be second-guessed as long as they are supported by substantial evidence. Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989); Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002). An ALJ may consider inconsistencies in the claimant's testimony and the objective medical evidence as two factors in determining credibility. Thomas, 278 F.3d at 958-59; Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). An ALJ can also use the "ordinary techniques of a credibility evaluation." Thomas, 278 F.3d at 960; Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001). Moreover, "a claimant's self-serving statements may be disregarded if unsupported by objective evidence." Bellamy v. Sec'y of Health & Human Servs., 755 F.2d 1380, 1382 (9th Cir. 1985); see also Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985). However, "an ALJ cannot reject a claimant's testimony without giving clear and convincing reasons" for doing so. Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001); see also Thomas, 278 F.3d at 958. In addition, when rejecting a claimant's testimony the ALJ must specifically identify what portions of the testimony he finds to be not credible and "explain what evidence undermines the testimony." Holohan, 246 F.3d at 1208; see also Thomas, 278 F.3d at 958-59.

      In this case, the question of credibility was relevant to the Plaintiff's allegation of an inability to perform any kind of work. The ALJ's determination that the Plaintiff was not credible was based on substantial evidence was specifically discussed within his decision, and was primarily based on the major discrepancies between the record and Plaintiff's testimony at the hearing. The ALJ discussed in depth the various claims of strokes, heart attacks, sickle cell anemia, and other medical complaints that the Plaintiff testified to at the hearing. These complaints were unsupported and contradicted by the objective medical evidence, as well as inconsistently reported by the Plaintiff. [AR 20, 21-22] For example, the Plaintiff claimed to have suffered from a stroke during the beginning of 2003, for which she was taken to Anaheim Hospital. [AR 44] Yet, Anaheim Hospital has no record of

the Plaintiff being hospitalized at their facility. [AR 414]  Prior to this, the Plaintiff had claimed a history of strokes dating back to the early 1990s. [AR 22, 43] However, in 1997 a normal CT scan ruled out any previous strokes, [AR 238], and in 2000 a neurological consultive examination revealed "no evidence of any neuromuscular deficit or any residual deficits from stroke" [AR 352.] The ALJ also noted that the Plaintiff had a history of poor compliance with medical recommendations. [AR 19]

In addition, the Plaintiff's assertion that she had *significantly* subaverage general intellectual functioning which manifested itself during her developmental period was contradicted by her prior work history.  The Plaintiff had worked from the age of 20 to 45 as a food service worker, a job that is categorized as semi-skilled. [AR 55, 90, 98]  Furthermore, the ALJ pointed out that the Plaintiff had been inconsistent in describing her level of education, stating at the hearing that she left school after the 9th grade, but stating on her paperwork that she had completed the 12th grade. [AR 18, 41, 95]  The ALJ's doubt as to the Plaintiff's credibility concerning her assertion of an inability to work was substantially supported by the record, and his decision stated clear and convincing reasons for rejecting her testimony. Therefore, the ALJ did not err in finding that the Plaintiff was not credible.

## **CONCLUSION AND ORDER**

In accordance with the foregoing, the decision of the Commissioner is

affirmed and plaintiff's Complaint dismissed.

**DATED:** <u>October 25, 2005</u>

```
                    _____/s/_____
                         STEPHEN J. HILLMAN
                     UNITED STATES MAGISTRATE JUDGE
```